## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DEREK MIXON, # 426481,

        Petitioner,

v.
                             Case No. 07-13360
                             Honorable Lawrence P. Zatkoff

JAN TROMBLEY,

        Respondent,

_____/

## OPINION AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS AND
## DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY AND
## LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS*

### I.  INTRODUCTION

Petitioner Derek Mixon, a state inmate currently confined at the Mound Correctional

Facility in Detroit, Michigan,[1] filed a *pro se* petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254, alleging that he is incarcerated in violation of his constitutional rights.  On

December 12, 2002, a Wayne County circuit court jury convicted Petitioner of (1) felony

murder, MICH. COMP. LAWS § 750.316b, (2) felon in possession of a firearm, MICH. COMP.

---

[1]Petitioner was incarcerated at the Saginaw Correctional Facility when he originally filed his habeas petition; however, he has since been transferred to the Mound Correctional Facility.  The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated.  Rule 2(a) of the Rule Governing § 2254 Cases; *see also Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006).  In most cases where a petitioner is transferred to a different facility after the petition has been filed, the Court would order an amendment of the case caption.  However, because the Court is denying the petition in this case, it finds no reason to do so.

LAWS § 750.224f, and (3) felony firearm, MICH. COMP. LAWS § 750.227b(a). On January

9, 2003, he was sentenced to life imprisonment for the felony-murder conviction, two to five

years in prison for the felon-in-possession conviction, and the mandatory two years in prison

for the felony-firearm conviction. For the reasons set forth below, the Court will deny the

petition. The Court will also decline to issue Petitioner a certificate of appealability and

leave to proceed on appeal *in forma pauperis*.

## II. FACTS

Petitioner's troubles in this case stem from the fatal shooting of Leonardo Arcome,

during the robbery of a car lot, which Leonardo and his brother Joseph owned. The Court

adopts the facts set forth by the Michigan Court of Appeals. The recitation of those facts are

entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). They are as follows:

> This case arises from an October 23, 2001, armed robbery of a car
> dealership owned by Joseph and Leonardo Arcome located on Gratiot Avenue
> in the city of Detroit. The prosecution presented evidence that defendant and
> Brian Hamilton robbed Joseph at gunpoint inside the dealership office. While
> the robbery was in progress, Leonardo returned to the office. Leonardo drew
> a gun and a shootout between him and defendant and Hamilton ensued.
> Leonardo was shot, allegedly by Hamilton, and died shortly after from his
> wounds.
>
> Defendant was shot twice in the shootout. He and Hamilton ran out of
> the office, and by coincidence, encountered an acquaintance, Shawn Walker,
> driving in his car. Defendant got into Walker's car, and told Walker he had
> been shot while robbing a car lot. Walker drove defendant to Detroit
> Receiving Hospital.
>
> Police questioned defendant at the hospital concerning his gunshot
> wounds. After determining that defendant had lied about how he was shot,
> Sergeant Marian Stevenson of the Detroit Police Department met defendant at
> the Detroit Receiving Hospital where he was being released into police

custody.  Defendant was taken to the ninth precinct's homicide division to participate in lineups.  A witness identified defendant as one of the persons who had run from the car lot.

On October 25, 2001, Sergeant Stevenson received word that defendant wished to speak with her.  Stevenson met with defendant, and discovered defendant did not have his prescribed pain medication.  Stevenson spoke to the officer at the ninth precinct front desk, who indicated that the medications had been ordered, but not picked up from the pharmacy.

Defendant was read his constitutional rights and signed a waiver of those rights, indicating that he wished to speak with Stevenson about the incident at the car lot.  Stevenson testified that defendant did not appear to be in pain and had no difficulty communicating.  More specifically, Stevenson indicated that she had a "good conversation" with defendant for roughly an hour and a half.  Stevenson also stated that the only complaint she heard from defendant was that he "kind of hurt."  Stevenson also indicated that defendant was "very cooperative" with her in making his statement.  At trial, Stevenson read into the record the following from defendant's written statement.

Q.  What can you tell me about the shooting of Leo Arcome on Wednesday [October 23, 2002]?

A.  Me and Brian . . . went to the auto place . . . .  And Brian told me to ask for the key to the other car.  When he went to get the keys, we followed him in. Brian went first, I followed him.

Q.  What happened next?

A.  Brian pulled his gun and I started searching his pockets.

Q.  Then what?

A.  Brian was looking around for something.  I was looking out the window. I saw the white guy pull up [Leo Arcome].  He pulled up close to the parking lot.  I heard him say who's in there?  I was trying to leave, but the white man pulled his gun.  So.  I closed the door.  And the white man started shooting through the door.  That's when I got hit.  And Brian started shooting then.

Q.  What happened next?

A.  I fell.  I got up.  I think the white guy ran off.  We started running.  We ran one way.  The white guy ran the other way.  That's when we ran to the light blue Lincoln and they took me to the hospital.

*People v. Mixon*, No. 247534, 2004 WL 1621679, at *1-2 (Mich. Ct. App. July 20, 2004).

Following his sentencing, Petitioner filed a claim of appeal with the Court of Appeals, raising the following claims:

I.     The trial court's refusal to suppress [Petitioner's] confession was clearly erroneous and its subsequent use at trial a deprivation of [Petitioner's] state and federal constitutional rights to due process of law and against involuntary self-incrimination, where the incriminating statements were extracted the day after his discharge from the hospital, and he had been kept in the precinct lockup without pain medication and adequate sleeping facilities.

II.    [Petitioner] was denied his state and federal constitutional rights to due process of law and a fair trial through improper prosecutorial misconduct, which repeatedly misstated the mental intent element of the law.

On July 20, 2004, the Court of Appeals affirmed Petitioner's convictions.  *People v. Mixon*, No. 247534, 2004 WL 1621679 (Mich. Ct. App. July 20, 2004).  On September 21, 2004, the Court of Appeals denied Petitioner's motion for reconsideration.  *People v. Mixon*, No. 247534 (Mich. Ct. App. Sept. 21, 2004).

Petitioner then filed an application for leave to appeal the Court of Appeals' decision with the Michigan Supreme Court, raising the same claims raised in the Court of Appeals.  On May 31, 2005, the Michigan Supreme Court denied Petitioner's application "because we are not persuaded that the questions presented should be reviewed by this Court."  *People v. Mixon*, 472 Mich. 913, 696 N.W.2d 718 (2005).

Petitioner subsequently filed a motion for relief from judgment in the trial court, raising the following claims:

I.      [Petitioner] was deprived of his right to due process and a fair trial when the prosecution in his case-in-chief removed the element of malice from the jury's consideration, when he informed the jury during both opening and closing arguments that the intent element of the felony murder was the intent necessary to prove the underlying felony.

II.     [Petitioner] was deprived of his right to due process and a fair trial when the learned trial judge gave an inadequate and insufficient instruction on the law of aiding and abetting.

III.    [Petitioner] was deprived of his right to due process and a fair trial when the trial court allowed the complainant's in-court identification where the complainant could not identify [Petitioner] at two corporeal lineups and said identification did not have an independent basis to identify [Petitioner] in court.

IV.     [Petitioner] was deprived of his right to effective assistance of counsel when counsel failed to move for a [*Wade*][2] hearing to challenge the in-court identification where [Petitioner] had not been picked out in [two] corporal lineups, and where counsel failed to recognize and object to the prosecutor basing his case-in-chief on the underlying felony in a felony murder case providing the intent element (malice) for the charged offense.

V.      [Petitioner] is entitled to post-conviction relief pursuant to [Mich.Ct.R.] 6.508(D).

On May 26, 2006, the trial court issued an opinion and order denying Petitioner's motion for relief from judgment. *People v. Mixon*, No. 01-13694 (Wayne County Circuit

---

[2]The United States Supreme Court in *United States v. Wade*, 388 U.S. 218 (1967), held that a defendant may request a hearing to determine the admissibility of a witness's identification testimony.

Court, May 26, 2006).

Petitioner then filed an application for leave to appeal the trial court's denial of his post-conviction motion with the Court of Appeals, which was denied on January 31, 2007, for failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Mixon*, No. 271342 (Mich. Ct. App. Jan. 31, 2007).

Petitioner subsequently filed an application for leave to appeal the Court of Appeals' decision with the Michigan Supreme Court. On July 30, 2007, the Michigan Supreme Court denied the application "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Mixon*, 479 Mich. 860, 735 N.W.2d 257 (2007).

On August 10, 2007, Petitioner filed the pending habeas petition, raising the following claims:

I.      Petitioner was deprived of his right to due process and a fair trial under the Fourteenth Amendment to the U.S. Constitution when the prosecutor in his case-in-chief removed the element of malice from the jury's consideration, when he informed the jury during both opening and closing arguments that the intent element of the felony murder was the intent necessary to prove the underlying felony.

II.     Petitioner was deprived of his right to due process and a fair trial under the Fourteenth Amendment to the U.S. Constitution when the learned trial judge gave an inadequate and burden shifting instruction on the law of aiding and abetting.

III.    Petitioner was deprived of his right to due process and a fair trial under the Sixth Amendment to the U.S. Constitution when the trial court allowed the complainant's in-court identification, where the complainant could not identify the Petitioner at two prior corporal lineups, and where Petitioner was placed in the lineups without counsel

after the adversary process had begun.

IV.    Petitioner was deprived of his right to effective assistance of counsel under the Sixth Amendment to the U.S. Constitution when counsel failed to recognize and object to the prosecutor basing his case-in-chief on a mandatory presumption of intent (malice) from the underlying felony; where counsel failed to move for a *Wade* hearing concerning a suggestive identification; and where Petitioner was deprived of counsel at a critical stage, a corporal lineup after prosecutorial proceedings were initiated; and where counsel on appeal of right failed to raise the substantial issues now being raised.

V.     Petitioner was deprived of his right to due process under the Fifth Amendment to the U.S. Constitution when the trial court failed to suppress his statements because Petitioner signed his name neatly, where Petitioner requested an attorney and was not advised of his *Miranda*[3] rights.

### III.  STANDARD OF REVIEW

28 USC § 2254(d) imposes the following standard of review that a federal court must utilize when reviewing applications for a writ of habeas corpus:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Federal courts are therefore bound by a state court's adjudication of a petitioner's

---

[3]*Miranda v. Arizona*, 384 U.S. 436 (1966).

claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). This Court must presume the correctness of a state court's factual determinations. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Williams*, 529 U.S. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law . . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11.

With that in mind, the Court proceeds to the merits of Petitioner's claims.

## IV. DISCUSSION

### A. Claim I–Prosecutorial Misconduct

In his first habeas claim, Petitioner alleges that he was denied a fair trial because the prosecutor improperly argued to the jury that the intent element of felony murder was presumptively satisfied by the commission of an armed robbery. Petitioner raised this claim on direct appeal but the Michigan Court of Appeals rejected it, stating:

> A claim of prosecutorial misconduct not preserved by a timely and specific objection during trial is subject to limited review for plain error which affected the defendant's substantial rights.
>
> When reviewing a claim of prosecutorial misconduct, this Court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context. Further, the propriety of a prosecutor's remarks will depend upon the particular facts of each case. "A prosecutor's clear misstatement of the law that remains uncorrected may deprive a defendant of a fair trial." However, if the jury is correctly instructed on the law by the trial court, an erroneous legal argument made by the prosecutor can be cured.
> The prosecutor made the following statement in regard to felony murder:
>
>> And our position to you is going to be very simple. Is that whenever you go in teamed with a partner both armed with handguns to take property that does not belong to you by force during an armed robbery that you are creating a situation which *by its own definition* is one that creates a very high risk of death or great bodily harm . . . . And quite simply put, an armed robbery *always* satisfies the third prong of second degree murder. And that is a person who creates a situation where there is a high risk of death or great bodily harm. [Emphasis added.]

9

Defendant correctly notes that *People v. Aaron*, 409 Mich. 672, 728; 299 NW2d 304 (1980), abolished the common-law felony murder rule that a defendant was guilty of murder for a homicide that occurred during the course of a felony if he had the intent to commit the underlying felony. Thus, the malice necessary for a felony murder conviction cannot be inferred from the intent to commit the underlying felony alone. Instead, the prosecution must establish one of the three intents that define malice in every murder case: (1) the intent to kill, (2) the intent to do great bodily harm, or (3) a wanton and willful disregard of the likelihood that the natural tendency of the defendant's act is to cause death or great bodily harm, i.e., depraved heart murder.

While arguably the prosecutor misstated the law by claiming that, "an armed robbery *always* satisfies the third prong of second degree murder," we nonetheless conclude defendant failed to establish plain error affecting his substantial rights. Any misstatements of law during the prosecution's opening and closing remarks were cured by the trial court's proper instructions concerning the felony murder charge. Defendant was not deprived of a fair trial from the misstatements of law by the prosecutor where they were corrected by the trial court. Moreover, the trial court specifically instructed the jury that only the court's instructions were to be followed. Jurors are presumed to follow their instructions. Therefore, defendant failed to show the alleged error affected his right to fair trial.

*Mixon*, 2004 WL 1621679, at *4 (citations omitted).

To the extent that Petitioner alleges that this claim is a violation of the Michigan Constitution or Michigan law, such a claim is not cognizable upon federal habeas review. A federal habeas court may only grant habeas relief to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); 28 U.S.C. § 2254(a). Therefore, habeas relief may not be based upon perceived error of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

Moreover, this claim is procedurally defaulted and without merit. The failure to

properly raise and preserve issues in the trial court is a recognized and firmly established independent and adequate ground in Michigan for refusing to review trial errors. Michigan has a contemporaneous-objection rule, which provides that "[a]ppellate review of allegedly improper conduct by the prosecutor is precluded where the defendant fails to timely and specifically object . . . ." *People v. Schutte*, 240 Mich.App. 713, 721-722, 613 N.W.2d 370, 377 (2000). The United States Supreme Court has recognized that the failure to contemporaneously object is generally a recognized and firmly established independent and adequate state-law ground for refusing to review trial errors. *Coleman v. Thompson*, 501 U.S. 722, 750-751 (1991).

The fact that the state appellate court may have examined whether the alleged improper evidence resulted in "manifest injustice" or "plain error" does not affect the preclusive effect of the procedural bar. The Sixth Circuit has held that the failure of a criminal defendant to contemporaneously object constitutes a procedural default even though an appellate court subsequently reviewed the matter for manifest injustice. *Paprocki v. Foltz*, 869 F.2d 281, 284-285 (6th Cir. 1989). Plain-error review by a state appellate court constitutes enforcement of a state's contemporaneous-objection rule. *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004), *cert. denied*, 544 U.S. 1003 (2005). Moreover, an alternative ruling by the state appellate court noting both lack of contemporaneous objection and lack of merit is still subject to the procedural default rule. *Scott v. Mitchell*, 209 F.3d 854, 866 (6th Cir. 2000).

When a petitioner defaults on his "federal claims in state court pursuant to an

independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Petitioner has the burden of showing cause and prejudice to overcome a procedural default. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman*, 501 U.S. at 754). In this case, Petitioner claims that the cause for his procedural default was ineffective assistance of trial counsel; his trial attorney erred in failing to object to the prosecutor's misconduct.

"Attorney error that amounts to ineffective assistance of counsel can constitute 'cause' under the cause and prejudice test." *Lucas*, 179 F.3d at 418 (citing *Gravley v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996)). In *Murray v. Carrier*, 477 U.S. 478, 488 (1986), the Supreme Court held that attorney error is not cause for procedural default analysis unless the performance of petitioner's counsel was constitutionally ineffective under the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, it is strongly presumed that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Accordingly, the inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance" viewed at the time of counsel's conduct. *Id.* Courts must not view a trial in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996). Even

12

when counsel's performance is deficient under this standard, constitutionally ineffective assistance of counsel requires a showing of actual prejudice. *Strickland*, 466 U.S. at 692. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

In this case, Petitioner fails to present any evidence to counteract the presumption that his counsel's failure to object to certain remarks by the prosecutor during opening statement and closing argument constituted trial strategy. The record is silent as to the rationale behind counsel's performance. Thus, the Court "can do no more than speculate as to some of the reasons why [Petitioner's defense] counsel might not [have objected]." *Stanford v. Parker*, 266 F.3d 442, 454 (6th Cir. 2001).

For example, defense counsel may have mistakenly, but honestly, believed that Petitioner would prevail at trial and he did not want to begin proceedings over again by requesting a mistrial. Also, defense counsel may not have wanted to draw attention to the prosecutor's comments, or may have thought any erroneous remark would have been cured by the trial court's instructions to the jury.

Since "scrutiny of counsel's performance must be highly deferential," *Strickland*, 466 U.S. at 689, and Petitioner has not presented any evidence to rebut the presumption that counsel's failure to object to several remarks by the prosecutor during closing and rebuttal argument constituted sound trial strategy, his ineffective-assistance-of-counsel claim under *Strickland's* performance prong fails.

13

Petitioner also cannot show prejudice under *Strickland*. To show prejudice under *Strickland*, Petitioner must establish that but for the alleged errors of his trial counsel, there is a reasonable probability that the result of the proceeding would have been different. Petitioner cannot meet that standard. He cannot show that the failure of his trial attorney to object to the prosecutor's opening statement and closing argument would have led to a different result. The Court therefore concludes that the Court of Appeals reasonably determined that Petitioner could not establish prejudice in his case, because any misstatements of law by the prosecutor were cured by the trial court's proper instructions on the felony-murder charge.

Additionally, Petitioner's case does not fall within the narrow class of cases to which the "fundamental miscarriage of justice exception" applies. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998). A petitioner may overcome a procedural default in the absence of "cause and prejudice" upon a showing of actual innocence. *Lott v. Coyle*, 261 F.3d 594, 620 (6th Cir. 2001) (citing *Schlup v. Delo*, 513 U.S. 298, 314-315 (1995), and *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). The fundamental miscarriage of justice exception applies in the extraordinary case where the habeas petitioner demonstrates that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory

14

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner must show "that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found [Petitioner] guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, (2006) (citing *Schlup*, 513 U.S. at 327)). Here, Petitioner has made no such showing.

Even if the Court were to consider Petitioner's defaulted prosecutorial-misconduct claim, the Court would find that it is without merit. In *Macias v. Makowski*, 291 F.3d 447 (6th Cir. 2002), the Sixth Circuit set forth the following approach for assessing prosecutorial-misconduct claims:

> "In deciding whether prosecutorial misconduct mandates that habeas relief be granted, the Court must apply the harmless error standard." The relevant question is thus whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."
>
> This court has adopted a two-step approach for determining whether prosecutorial misconduct violates a defendant's due process rights. First, we must consider whether the prosecutor's conduct and remarks were improper. If we conclude that the remarks were improper, then we must apply the four-factor test set forth in *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994), to determine "whether the impropriety was flagrant" and thus violated the defendant's due process rights. The four factors are as follows: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong."

*Macias*, 291 F.3d at 451-52 (citations omitted).

In this case, as the Court of Appeals noted, any misstatements by the prosecutor were cured by the trial court's jury instructions. It is well established that "[a] jury is presumed

to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Thus, any misstatements did not rise to the level of a constitutional violation or so infect the trial with unfairness as to make the resulting conviction a denial of due process.

The Court also concludes that, if there were an error, that error was harmless. The standard for showing harmless error on collateral review, like the standard for demonstrating that a trial error has occurred, is considerably less favorable to the petitioner than the standard applicable on direct review. On direct review, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt," and the state has the burden of proof. *McGhee v. Yukins*, 229 F.3d 506, 513 (6th Cir. 2000) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). The test here differs. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). In fact, the Supreme Court has made it clear:

> [T]hat in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht* [], whether or not the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in *Chapman* [].

*Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).

"[T]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*,

457 F.3d 501, 516 (6th Cir. 2006), *cert. denied*, 551 U.S. 1134 (2007) (quoting *Donnelly v*

*DeChristoforo*, 416 U.S. 637, 645 (1974)).

The Court concludes that the state court adjudications of Petitioner's prosecutorial-misconduct claim were neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. Petitioner is not entitled to habeas relief on this claim.

## B. Claim V–Involuntary Confession

In his fifth habeas claim, Petitioner alleges that he was denied a fair trial when the trial court failed to suppress an involuntary statement that he gave to police; he further alleges that the trial court erred in rejecting his claim that he requested counsel. Petitioner raised these claims on direct appeal but the Court of Appeals found them to be without merit, stating:

> Defendant first argues his confession was involuntary because he was in "extreme pain" and forced to continue his interrogation without pain medication.

> On appeal from a ruling on a motion to suppress evidence of a confession, deference is given to the trial court's findings. An appellate court will not disturb the trial court's factual findings unless they are clearly erroneous. This Court must affirm unless left with a definite and firm conviction that mistake was made.

> Defendant argues his "extreme pain" impaired his ability to make a free and unconstrained choice to speak with the police. In determining voluntariness, the court should consider all the circumstances, including: the duration of the defendant's detention and questioning; the age, education, intelligence and experience of the defendant; whether there was unnecessary delay of arraignment; the defendant's mental and physical state; whether the defendant was threatened or abused; and any promises of leniency.

> At his *Walker* hearing, defendant testified that he was in "extreme pain" when he was at the hospital, and when he was transported to the ninth precinct. Also, that he was given morphine for the pain. Defendant testified that he told

Stevenson that he should not have been released from the hospital because he was in extreme pain. Also that on October 24, defendant asked Stevenson where his prescription for pain medication was, but it was not provided to him. Further, that on the next day, when defendant met with Stevenson, another police officer told him he would not receive the medication until he answered a few questions. Defendant testified to the following:

Q. How did you feel when they said that to you [i.e., that you would have to answer questions before getting the prescription]?

A. I felt like my rights was being violated in some type of way. I didn't know what type of way it was, and I asked them for a lawyer.

Q. Was a lawyer provided to you?

A. No.

Q. Did they continue to question you?

A. Yes.

Q. Why did you answer questions if you felt your rights were being violated?

A. Well, I was in extreme pain. I felt the only way I could get some medication is I tell them what they wanted to hear. So, that's what I did.

Defendant further testified that after the interview with Stevenson, he asked to be returned to the hospital. Defendant was returned to hospital and given his prescription.

Notwithstanding defendant's testimony, we conclude that the trial court did not clearly err in finding that defendant was not in "extreme pain" when giving his statement to police. In contrast to defendant's testimony, Sergeant Stevenson testified that defendant did not request medication and did not appear to be in extreme pain. Moreover, the trial court observed that defendant neatly wrote in detail about the robbery and neatly signed his statement. These characteristics about the written statement are inconsistent with defendant's claim of "extreme pain." Thus, the trial court's finding that defendant was not in "extreme pain" at the time relevant to his giving his statement to police is not clearly erroneous.

Further, we conclude that defendant's pain did not impair his ability to make a free and unconstrained choice to speak with the police. At the outset, defendant was fully apprised of his constitutional rights, and signed a waiver of those rights before any questioning by police. Defendant admitted during his *Walker* hearing that he was able to provide very specific answers to the questions posed by officers. He also stated that he was telling the truth when he provided answers during interrogation. Therefore, we are not left with a definite and firm conviction that defendant's confession was involuntary, and reversal is not required on this basis.

Defendant also argues that the trial court erred in ruling that defendant lied at his *Walker* hearing about requesting counsel before his interrogation. Deference is given to the trial court's assessment of the weight of the evidence and credibility of the witnesses, and the trial court's findings will not be reversed unless they are clearly erroneous. Here, the trial court found that the signed statement of confession along with the signed waiver of constitutional rights supported the conclusion that had never requested counsel. The trial court properly weighed defendant's alleged request for counsel before interrogation against the evidence that defendant waived his right to counsel. Therefore, we decline to reverse defendant's convictions on this issue, giving due deference to the trial court's ruling that defendant never requested counsel.

*Mixon*, 2004 WL 1621679, at 2-4 (citations and footnote omitted).

To the extent that Petitioner alleges a violation of the Michigan Constitution or Michigan law, such claims are not cognizable upon federal habeas review. *See* section I, *infra*. The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. When a criminal defendant claims that his confession was rendered involuntarily by police coercion, the court must inquire whether, considering the totality of the circumstances, the conduct of law enforcement officials overbore the will of the accused. *Mincey v. Arizona*, 437 U.S. 385 (1978); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973).

A suspect's state of mind, standing alone, cannot render a statement involuntary.

Rather, coercive police conduct is a necessary prerequisite to the conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession. *Colorado v. Connelly*, 479 U.S. 157, 163-67 (1986). Typically, findings of coercive police conduct involve brutality or threats of physical coercion. Nevertheless, a confession may be rendered involuntary if it is the product of psychological pressure or coercion sufficient to overbear the will of the accused. *Arizona v. Fulminante*, 499 U.S. 279, 287-88 (1991). Among the circumstances to be reviewed by the habeas court are "the crucial element of police coercion, the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition and mental health.'' *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).

In *Miranda*, the Supreme Court held that the privilege against self-incrimination protects individuals not only from legal compulsion to testify in a criminal courtroom but also from "informal compulsion exerted by law-enforcement officers during in-custody questioning." *Miranda*, 384 U.S. at 461. In order to protect that right, the Supreme Court determined that prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. *Id.* at 479. Unless the suspect knowingly, voluntarily, and intelligently waives these rights, any incriminating responses to the questioning will be excluded. *Pennsylvania v. Muniz*, 496 U.S. 582, 589 (1990) (quoting *Miranda*, 384 U.S. at 461)).

Once warnings have been given, if the individual indicates in any manner, at any time

prior to or during questioning, that he wishes to remain silent, the interrogation must cease. *McGraw v. Holland*, 257 F.3d 513, 518 (6th Cir. 2001) (quoting *Miranda*, 384 U.S. at 473-74)). In *Rhode Island v. Innis*, 446 U.S. 291 (1980), the Supreme Court said that "interrogation" consisted of "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301. In *Michigan v. Mosley*, 423 U.S. 96, 104 (1975), the Supreme Court held "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" *See also Berghuis v. Thompkins*, 560 U.S. ___ (2010) (the Supreme Court held that if the accused makes an ambiguous statement or no statement, the police are not required to end the interrogation).

In this case, the trial court, prior to trial, held a *Walker*[4] hearing on Petitioner's motion to suppress certain statements given to the police. The trial court, after hearing testimony from Sergeant Stevenson and Petitioner, and, after considering the totality of the circumstances and the credibility of Sergeant Stevenson and Petitioner, determined that Petitioner's statements were voluntary and that his constitutional rights were not violated. The trial court also found Petitioner's claim that he requested an attorney prior to Sergeant

---

[4]A *Walker* hearing is conducted in accordance with *People v. Walker*, 374 Mich. 331, 132 N.W.2d 87 (1965), which requires trial courts, not juries, to determine the voluntariness of confessions. At such a hearing, the defendant may take the stand and testify for the limited purpose of making a record of his version of the facts and circumstances under which the confession was obtained.

Stevenson's questioning not believable.

Under the AEDPA, the factual findings of the state court that Petitioner's statements were voluntary are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *West v. Seabold*, 73 F.3d 81, 83 (6th Cir. 1996). Here, Petitioner simply reiterates his disagreement with the state-court determination. That alone does not overcome the presumption of correctness of the state-court decision. Petitioner has therefore failed to rebut the findings of the state courts and is not entitled to habeas relief on this claim.

## C. Claims II, III, and IV–Procedurally Defaulted

In his second habeas claim, Petitioner alleges that he was denied a fair trial because the trial court gave an inadequate and burden-shifting instruction on the law of aiding and abetting. In his third habeas claim, he alleges that he was denied a fair trial when the trial court allowed Joseph Arcome's in-court identification, where Arcome could not identify him at prior lineups and where he was placed in the lineups without counsel. In his fourth habeas claim, Petitioner alleges that his trial attorney was ineffective for failing to object to the purported misconduct by the prosecutor and for failing to move for a *Wade* hearing concerning the suggestive identification procedure. Petitioner also alleges ineffective assistance of appellate counsel for failing to raise these claims on direct appeal. The Court finds that claims II, III, and IV are procedurally defaulted.

Federal habeas review is barred where a state court declined to address a prisoner's federal claims because the prisoner failed to meet state procedural requirements. In such cases, the state court judgment rests on independent and adequate state procedural grounds.

22

*Coleman*, 501 U.S. at 750. In this case, Petitioner's second, third, and fourth habeas claims are procedurally defaulted. Petitioner raised these claims for the first time in his motion for relief from judgment. The Michigan Court of Appeals denied his application for leave to appeal the denial of his post-conviction motion for failure to establish grounds for relief pursuant to M.C.R. 6.508(D). Likewise, the Michigan Supreme Court denied his application for the same reason.

For a claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, and the state court must have also based its decision on the procedural default. *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). If a state prisoner defaults his federal claims in state court in a decision based on an independent and adequate state procedural rule, those claims cannot be reviewed in a habeas proceeding. *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998). In order for the procedural default doctrine to apply, the last state court rendering a judgment in the case must have based its judgment on the procedural default. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

Here, the Michigan Court of Appeals and Michigan Supreme Court, the last state courts rendering judgments in the case, based their decisions to deny Petitioner's applications for leave to appeal the trial court's denial of his post-conviction motion on his failure to comply with M.C.R. 6.508(D). While the judgments were brief, they were based on an independent and adequate state procedural rule—Petitioner's procedural default for failing to raise these claims in his appeal of right. Since the Michigan Court of Appeals and Michigan Supreme Court were the last state courts rendering judgments in this case, their

23

decisions denying Petitioner's claims on the basis of a state procedural bar prevents federal habeas review. *Simpson*, 238 F.3d at 407.

As noted in Section I, a habeas petitioner who fails to comply with a state's procedural rules waives his right to habeas review absent a showing of cause for noncompliance, actual prejudice resulting from the alleged constitutional violation, or a fundamental miscarriage of justice. *See* Section I.

In his fourth habeas claim, Petitioner attempts to establish cause to excuse his procedural default by claiming that his appellate counsel was ineffective for failing to raise the claims in his direct appeal. Attorney error will not constitute adequate cause to excuse a procedural default unless it amounts to constitutionally ineffective assistance of counsel under the criteria established in *Strickland*. The mere failure to raise a claim, even if meritorious, on appeal does not constitute ineffective assistance of appellate counsel sufficient to establish cause to excuse a procedural default. *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). In *Smith v. Robbins*, 528 U.S. 259, 288 (2000), the United States Supreme Court stated:

> In *Jones v. Barnes*, 463 U.S. 745 [parallel citations omitted] (1983), we held that appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. *See*, e.g., *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome").

*See also McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000) (where claim was not "dead

24

bang winner," Petitioner's appellate counsel's failure to raise it on direct appeal did not constitute cause to excuse procedural default).

In this case, various issues were raised in Petitioner's direct appeal. The Court finds that he has failed to demonstrate that the issues that were allegedly ignored by appellate counsel on direct appeal were clearly stronger than those that were presented, and he has failed to overcome the strong presumption that his appellate counsel was competent. Since Petitioner has failed to establish cause for his procedural default, there is no need to determine whether Petitioner can meet the prejudice prong of the cause and prejudice test. *Smith v. Murray*, 477 U.S. 527 (1986).

Even if Petitioner could establish cause, the Court finds that he cannot establish prejudice because the underlying claims he raised in his motion for relief from judgment are not cognizable or without merit, for the reasons stated below. Petitioner has also failed to establish a fundamental miscarriage of justice. *See* Section I. Consequently, Petitioner's default bars federal habeas review of his claims.

## 1. Merits of Claims II, III, and IV

In his second habeas claim, Petitioner claims that he was denied a fair trial where the trial court gave an inadequate aiding and abetting instruction that improperly shifted the burden of proof. Again, to the extent Petitioner alleges a violation of his rights under Michigan law or a violation of the Michigan jury instructions, such claims are not cognizable upon federal habeas relief. As previously noted, a violation of state law or a state court's application of state law may not be reviewed by a federal habeas corpus court since any such

25

errors are not of a constitutional magnitude. *Estelle*, 502 U.S. at 67-68.

"[A]s a general rule, errors in instructions of a trial court to a jury in a state criminal trial are not reviewable in federal habeas corpus proceedings . . . unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981) (citations omitted). Even when instructional error is considered, to warrant habeas relief the petitioner must show that the instructions, as a whole, were so infirm as to render the entire trial fundamentally unfair. *Estelle*, 502 U.S. at 72. In *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977), the Supreme Court described this high burden:

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," . . ., not merely whether "the instruction is undesirable, erroneous, or even universally condemned."

Furthermore, a constitutional error that implicates trial procedures is considered harmless on habeas review unless it had a substantial and injurious effect or influence in determining the jury's verdict. *See* Section I. In this case, the trial court properly instructed the jury on the elements of aiding and abetting and properly informed the jury that the prosecution had the burden to prove guilt beyond a reasonable doubt. Against that backdrop, the Court concludes that Petitioner has failed to show that the trial court's instructions, as a whole, were so infirm as to render his entire trial fundamentally unfair, or that any error had

26

a substantial and injurious effect on the jury's verdict.  Petitioner is therefore not entitled to habeas relief on this claim.

In his third habeas claim, Petitioner claims that he was denied a fair trial when the trial court allowed Joseph Arcome's in-court identification where Arcome failed to identify him at a lineup.  Petitioner also claims that he was without counsel at the lineup.  In *United States v. Meyer*, 359 F.3d 820, 824 (6th Cir. 2004), the Sixth Circuit set forth the following relevant law regarding identification testimony:

> A conviction based on identification testimony violates the defendant's constitutional right to due process whenever the identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  A defendant is denied due process "only when the identification evidence is so unreliable that its introduction renders a trial unfair."  "As long as there is not a substantial likelihood of misidentification, it is the function of the jury to determine the ultimate weight to be given to the identification."

> This court has prescribed a two-step analysis for determining the admissibility of identification evidence.  First, the defendant bears the burden of proving that the identification procedure was impermissibly suggestive.  Second, if the defendant meets this burden, the court evaluates the totality of the circumstances to determine whether the identification was nevertheless reliable.  The following factors guide the court's reliability analysis: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witnesses's level of certainty when identifying the defendant at the confrontation; and (5) the length of time between the crime and the confrontation.  If the defendant fails to show that the procedure was impermissibly suggestive, or if the totality of the circumstances indicates that the identification was otherwise reliable, admission of the identification testimony does not violate the defendant's right to due process.

In this case, Petitioner has failed to establish that anything about the pre-trial lineup

was unduly or impermissibly suggestive. At trial, Mr. Arcome testified that he identified Petitioner as the perpetrator in the preliminary examination and that he believed that bad lighting at the police station was a factor in him not identifying Petitioner at the initial lineup. With that, the Court concludes that Mr. Arcome's identification at the preliminary examination was not based on an unduly or impermissibly suggestive lineup, and that his identification at the preliminary examination was sufficiently reliable.

Petitioner has also failed to establish that he was entitled to counsel at the initial lineup. An accused's right to have counsel present at a pre-trial identification procedure only attaches to corporeal lineups conducted at or after the initiation of adversarial judicial criminal proceedings. *Moore v. Illinois*, 434 U.S. 220, 227-28 (1977). Here, Petitioner has failed to establish that such was the case.

In his fourth habeas claim, Petitioner alleges that his trial attorney was ineffective for failing to object to the alleged prosecutorial misconduct. For more-detailed reasons set forth in Section I, the Court concludes that Petitioner has not met either prong of the *Strickland* test. He has also failed to show that his attorney was ineffective in failing to move for a *Wade* hearing where there was no evidence that the pre-trial lineup procedure was impermissibly suggestive. An attorney is not ineffective in failing to file a motion where there was no reasonable probability that the motion would be granted. Also, because the lineup was not impermissibly suggestive, Petitioner's attorney did not err in failing to object to Joseph Arcome's in-court identification. *Millender v. Adams*, 376 F.3d 520, 525 (6th Cir. 2004). Arcome's failure to identify Petitioner during the lineup went to the credibility of his

in-court identifications, not its admissibility.  *Id.* at 525 (citing *United States v. Causey*, 834 F.2d 1277, 1286 (6th Cir. 1987)).  Finally, because Petitioner has failed to establish that he was improperly denied counsel at the pre-trial identification procedure, he cannot show that defense counsel was constitutionally deficient in not objecting on that basis.

Against that backdrop, the Court concludes that Petitioner is not entitled to habeas relief regarding these claims.

### D.  Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition.  Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]"  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U .S.C. § 2253(c)(2).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong . . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that reasonable jurists would neither find its assessment of Petitioner's  claims debatable or wrong nor its procedural ruling debatable or wrong.  The

Court therefore declines to issue Petitioner a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

## V. CONCLUSION

Accordingly, **IT IS ORDERED** that the "Petition for Writ of Habeas Corpus" [dkt. # 1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court declines to issue Petitioner a certificate of appealability and leave to proceed on appeal *in forma pauperis* because any appeal would be frivolous. *See* Fed.R.App.P. 24(a).

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: June 17, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on June 17, 2010.

S/Marie E. Verlinde
Case Manager
(810) 984-3290